ISABELLA GARDEN et al. *v.* ANNA W. GARDEN, named as the Executrix of the last will of FRANCIS R. GARDEN, deceased.

Although the general rule of law is that no one is to be presumed to be dead, until the expiration of seven years from the time he was last seen, or heard of; yet his death may be presumed after a shorter period of time, if the facts and circumstances proved, will warrant such a presumption in the case. But stricter and stronger presumptive proof will be required to warrant it in the latter instance.

On the trial of an issue of *devisavit vel non* in which the only question involved was whether the testator of the disputed will was then living, or dead, the jury was instructed that if they were satisfied from all the evidence they had heard in regard to him, his character, habits, health and constitution, that he had left the State and gone to California, and had not been seen, heard from, nor heard of, by any known person either there, or here, or elsewhere, for a period of about three years and a half, and that diligent efforts and proper inquiries, particularly in California where he was living when last heard of, had been made in the meanwhile by the parties setting up the will, and that no intelligence had been, or could be obtained in regard to him, during that time; and they had probable cause and good reason to believe and conclude in their own minds, upon all the evidence which they had before them in regard to him, that he was no longer living, that then and in that case, they would be warranted in law in presuming that he was now dead

THIS was an issue of *devisavit vel non* awarded by the Register of Wills for New Castle County to inquire by the verdict of a jury at the bar of this court, whether the paper writing annexed, purporting to be the last will and testament of Francis R. Garden, deceased, was, or was

not, the last will and testament of Francis R. Garden, deceased.

*D. M. Bates*, for the plaintiffs in the issue : The only question involved in the issue, and which the jury would be called upon to decide, was whether Francis R. Garden, whose signature had been formally subscribed, in the presence of the necessary number of witnesses, and who had also duly signed it as such witnesses in his presence, to the instrument in question, as his last will and testament, was now dead.   The plaintiffs in the issue would not be able, for reasons which would be sufficiently disclosed hereafter in the examination of their witnesses, to produce any positive or direct evidence of his death, or of the exact time or place, when and where it occurred. They would, however, be able to prove such facts and circumstances in regard to him for several years past, and up to the last melancholy tidings which they or any one else had had of him, as would afford to every reasonable mind, the strongest presumption of his death several years since, although a sufficient time had not elapsed since the last sad tidings which they had been able after painful and diligent inquiry to obtain of him, to render that presumption a presumption in law; and as under such circumstances, it became incumbent upon the parties setting up the will, to establish the fact of his death simply, without being required to prove directly when or where it happened, by evidence of such facts and intelligence with regard to him, as will afford to the minds of the jury a strong and satisfactory presumption of his death, he would, without saying more for the present, proceed to lay such proof before them, as could not fail in his opinion, to conduct them irresistibly to that conclusion.

*Gordon*, for the plaintiffs, then proposed to offer in evidence the paper writing purporting to be the will in question, which was executed in the city of Panama in

New Granada in the presence of the Consul of the United States and certified by him, and to read the depositions of the subscribing witnesses who resided there, and which appeared in the subscriptions of their names as witnesses to it, and also in the execution of the instrument.

*Guthrie,* for the defendant, objected that the authentication of the paper offered was not sufficient to admit such secondary evidence of their depositions and proof of the execution of the instrument in question.

*The Court,* however, upon inspecting the record of the issue as sent up by the Register and finding that he had directed that the commission and depositions referred to and returned before him, should be read in evidence before the jury on the trial of the issue ordered and awarded by him, allowed them to be read in evidence, which was accordingly done.

The counsel for the plaintiffs then proceeded and proved by several witnesses that the testator, before he left the State, had become exceedingly intemperate in his habits, and left it in the month of May or June, 1858, and went with his wife to California, and that the last letter which had been received from him, and the last which had been heard of him by any of his relations or acquaintances, either in this, or that State, was in the month of May, 1860. That his wife about that time returned to the State without him, and the last letter received from him stated, that he was about coming back, or coming home again. That frequent inquiries and repeated efforts had been made in the meanwhile by members of his family and by his connections, but without success, first to learn where he was, and afterward to ascertain if he was living; but nothing had been heard, or could be learnt with regard to him since that time. That he was a free-mason, and upon an inquiry made by them through the agency of all the masonic lodges throughout the State of California,

and according to the last they could learn of him, he was seen in San Jose on the 18th of May, 1860, and was heard to say that he was going to take the next steamer and return East, but in a short time after that he was seen on the streets of San Francisco in a beastly state of intoxication and of almost entire nudity; and since that time nothing farther had been heard or could be learnt of him.

*Dow*, for the plaintiffs, stated the general rule of law in regard to the presumption of death in such cases, and contended that although the testator had not been absent, nor unheard of for a period of not less than seven years, yet the circumstances just proved, his confirmed and debased habit of extreme drunkenness and the wretched condition in which he was for the last time seen in the streets of San Francisco in the month of May or June, 1860, and that no tidings whatever, had been, or could be obtained of him since from any quarter, not only afforded a sufficient, but the strongest presumption possible of his speedy death thereafter, and that it was almost a moral impossibility for any one to believe that he could now be alive, and yet be unheard of by any one for more than three years after that period. Every effort had been made and the most diligent and anxious inquiry had been instituted in order to ascertain since then if any one had seen or heard of him, without obtaining the slighest information of his existence anywhere, and therefore the jury could have no hesitation in coming to the conclusion in their own minds, upon such testimony as they had just heard with regard to him, or to the necessary inference and presumption at least, that he was now dead, which was all they were required to do in disposing of the question or issue which they had been empanelled to try.

*Guthrie*, for the defendant: The present case so far as it had gone, he felt warranted in saying, was not a case of proof, such as the law required under circumstances

**73**

like these, where but little more than three years had elapsed since the party had been seen and been proved to be alive, but on the contrary, it was purely a case of presumption, and if the strict and well known rule of law on the subject was to be entirely ignored or discarded in the determination of it, it would commit all the rights of the parties involved in it and depending upon the decision of it, to the fancy, or caprice, the unlimited discretion, or arbitrary assumption of the jury in the matter. The circumstances relied on to take the case out of the operation of the general rule of law in regard to the presumption of death resulting from lapse of time merely, were not sufficient for that purpose ; for as strong and striking as that proof had appeared, it had at the same time been proved on cross examination by the same witnesses, that the reputed testator was a man of an unusually strong and vigorous constitution, and that he could not only drink more liquor than any other man they ever saw, but that he was after all, only a periodical, but not a habitual drunkard ; and both the court and the jury were aware that such drunkards sometimes wander about, and make out to live a long while. His very habits, such as they were, might well suffice, according to theory of reasonable presumptions in such cases, to account for his three years absence and failure, or forgetfulness to keep his friends either in the East or West, advised of his unhappy wanderings ; but they did not and could not afford any ground for such a strong presumption of his death as the strict rule of law requires in every such exceptional case.

*Gordon*, replied.

*The Court, Wooten, J., (in the absence of Gilpin, C. J.,)* charged the jury : That it seemed to be conceded by the counsel for the defendant, that the formal testimony required as to the paper writing, or instrument in issue, as the last will and testament of Francis R. Garden, deceased,

had been supplied upon the trial of it, and the only ground upon which it was denied to be his last will and testament, has been, as the counsel for the defendant contends, that sufficient evidence has not been produced before the jury to warrant the presumption of his death at the present time upon all the facts and circumstances proved in regard to him. This might be said in a certain sense to be a mixed question both of fact and law; that is to say, it was a question as to a matter of fact to be decided by the jury dependent upon a question of law as to what degree of presumptive, in the absence of any direct and positive, proof, is required, or will be sufficient to warrant the jury in presuming and deciding that he is now dead, although they have no actual proof of the alleged fact before them. And this last is a legal question on which it is both the province and the duty of the court to give you the proper instructions for your guidance when you come to consider and determine the former question. The general rule of law in regard to the presumption of death of a person, when it becomes a question, or a matter of uncertainty, whether he is dead or living, arising from the fact that he has not been seen or heard of for a period sufficient under the circumstances to suggest the question, or a doubt about it, is that after a period of seven years absence, without in the meanwhile having been seen, heard from or heard of by any known person, his death will be presumed in law to have occured by that time, and it will not be necessary to prove his death by direct and positive evidence, or to do anything more in regard to it, than to prove the facts and circumstances from which the law in such a case will necessarily presume or imply it. And if in such case his death is still questioned or doubted, the law devolves upon the party who denies it in any action, the duty of proving that he is still living. But when the period of his absence without having been seen or heard of, is less than seven years, the presumption of his death in law does not arise without further proof of additional facts

and circumstances in regard to him, of such a character and import as to satisfy the jury, that although not actually and positively proved, it is highly probable, and that it would be reasonable to presume his death under such circumstances. In such a case as we have last mentioned, the law requires stricter and stronger proof of facts and circumstances to warrant the presumption of his death, than in the former case, such as an earnest and diligent effort and all proper inquiries on the part of those who allege his death, to ascertain if possible by certain and positive intelligence whether he be dead, or living, without success, before it will permit his death to be inferred from even such additional presumptive evidence merely. In the present case, therefore, if the jury were satisfied from all the facts and circumstances which they had in evidence before them in regard to Thomas R. Garden, his character, habits, health and constitution, that he had not been seen, heard from, or heard of by any one of his relations, friends or acquaintances, either in this State, or in the State of California, or elsewhere, since the month of May or June, in the year 1860, and that earnest and diligent efforts have been made and all proper inquiries have been instituted by the plaintiffs in this proceeding, to learn and ascertain, particularly in California where he was living when last heard of, in the meanwhile by the best means in their power, whether he is living or dead, and that they have failed to ascertain either, or to obtain any knowledge or information since then in regard to him, and you have probable cause and good reason to believe and to conclude in your own minds upon all this evidence, that he is no longer living, then and in that case, the jury would be warranted in law in presuming that he is dead at this time; and if so, then it would be their duty to find by their verdict, that the instrument in question is his last will and testament; but if otherwise, that it is not; for no man can have a last will and testament in law, or in a legal sense, so long as he is living; it only becomes so, as soon as he is dead.